# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

ANDRES RUBIO-GUERRERO,

  Petitioner,

vs.

UNITED STATES OF AMERICA,

  Respondent.

No. C 09-4058-MWB
(No. CR 07-4089-MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S SECTION 2255
MOTION**

_____

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. The Petitioner's Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . 2
   *B. The Petitioner's § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. PRELIMINARY MATTERS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*III. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . 5
   *B. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . 8
      *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *2. Failing to raise outrageous conduct* . . . . . . . . . . . . . . . . 10
      *3. Invalid guilty plea* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *4. Withholding of Brady materials* . . . . . . . . . . . . . . . . . . . 14
      *5. Violation of judicial rules of conduct* . . . . . . . . . . . . . . 16
      *6. Bias of judge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      *7. Violation of right to confront witnesses* . . . . . . . . . . . . . 18
      *8. Lack of jurisdiction or venue* . . . . . . . . . . . . . . . . . . . . 20
      *9. Insufficient indictment* . . . . . . . . . . . . . . . . . . . . . . . 21
      *10. Failure to file motion to dismiss* . . . . . . . . . . . . . . . . . 23
      *11. Failure to properly advise of potential sentence* . . . . . . . . 25
   *C. Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.  INTRODUCTION

This case is before the court on petitioner Andres Rubio-Guerrero's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1), filed on August 3, 2009.  Rubio-Guerrero claims that the attorney who represented him at the trial level provided him with ineffective assistance of counsel in several ways.  The respondent denies that Rubio-Guerrero is entitled to any relief on his claims.

### A.  The Petitioner's Criminal Proceedings

On October 25, 2006, Rubio-Guerrero was charged by a one-count Indictment (Crim. docket no. 3), with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 50 grams or more of actual (pure) methamphetamine and marijuana, from about April 1, 2006, continuing through October 4, 2006. *See,* Crim. docket no. 3.  Rubio-Guerrero appeared before United States Magistrate Judge Paul A. Zoss, (now Chief United States Magistrate Judge), on October 26, 2006, and pleaded not guilty to the Indictment.  *See* Crim. docket no. 8.

On April 6, 2007, Rubio-Guerrero pleaded guilty, without a plea agreement, to the Indictment.  *See* Crim. docket no. 50.  Judge Zoss entered his Report and Recommendation to Accept Guilty Plea, (Crim. docket no. 53), on April 6, 2007, recommending that Rubio-Guerrero's guilty plea be accepted.  By Order (Crim. docket no. 59), filed April 23, 2007, the undersigned accepted Rubio-Guerrero's guilty plea.  Rubio-Guerrero appeared on August 16, 2007, before the undersigned, for sentencing.

*See* Crim. docket no. 83. Rubio-Guerrero was sentenced to 240 months. *See* Crim. docket no. 85. In addition to the term of imprisonment, Rubio-Guerrero was placed on supervised release for a period of 5 years. *See* Crim. docket no. 85.

On August 22, 2007, Rubio-Guerrero filed a Notice Of Appeal (Crim. docket no. 87), to the United States Court of Appeals for the Eighth Circuit. On July 28, 2008, the United States Court of Appeals for the Eighth Circuit entered an Opinion, Mandate and Judgment (Crim. docket nos. 116, 117 & 118) finding that implied objections to specific facts in PSIR's do not prohibit a district court from relying on such facts and that unobjected to portions of the PSIR in Rubio-Guerrero's case demonstrated that he was an organizer and leader of the conspiracy, thereby affirming the judgment of the district court.

Rubio-Guerrero filed a Petition for Writ of Certiorari on October 23, 2008. *See* Crim. docket no. 122. Rubio-Guerrero's Petition for Writ of Certiorari was denied on March 2, 2009. *See* Crim. docket no. 123. On July 30, 2009, Rubio-Guerrero filed a *pro se* Motion to Disqualify (Crim. docket no. 124) the undersigned on the basis of prejudice and bias. Rubio-Guerrero alleged that the undersigned's comment during sentencing that the Rules of Evidence did not apply was racially motivated. *See* Crim. docket no. 124). By Order (Crim. docket no. 125) dated July 30, 2009, this court found that there were no pending matters for the undersigned to recuse himself from, that Rubio-Guerrero's Motion was insufficient based on his failure to comply with the affidavit requirements of 28 U.S.C. § 144 and that even if the court were to consider Rubio-Geurrero's unsworn allegations, they would be insufficient to demonstrate any "deep seated favoritism or antagonism that would make fair judgment impossible." *See* Crim. docket no. 125.

## B. The Petitioner's § 2255 Motion

On August 3, 2009, Rubio-Guerrero filed this *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1) ("Motion") and a *Pro Se* Motion to Appoint Counsel (Civ. docket no. 2). By Order (Civ. docket no. 4), dated August 3, 2009, the court appointed counsel to represent Rubio-Guerrero. By counsel, Rubio-Guerrero filed a "Brief in Support of Motion" (Civ. document no. 8), on October 1, 2009. On December 7, 2009, Rubio-Guerrero filed a *Pro Se* Supplement (Civ. docket no. 13) to his Motion. The respondent filed a Resistance (Civ. docket no. 16), on March 15, 2010.

## II. PRELIMINARY MATTERS

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. § 2255. In this case, the court concludes that no evidentiary hearing is required on any issue, because the record conclusively shows that Rubio-Guerrero's allegations, if accepted as true, would not entitle him to relief because he can demonstrate no prejudice and further that Rubio-Guerrero's allegations cannot be accepted as true because they are contradicted by the record.

Some of Rubio-Guerrero's claims appear to be procedurally defaulted, in that they were not raised at trial or on direct appeal. *See Ramey v. United States*, 8 F.3d 1313, 1314 ("Section 2255 relief is not available to correct errors which could have been raised

at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." (internal citations omitted)); *accord Johnson v. United States*, 278 F.3d 839, 844 ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'" (quoting *Bousley*, 523 U.S. at 622, with citations omitted)). However, as noted above, the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht*, 403 F.3d at 545. In construing Rubio-Guerrero's claims as claims of ineffective assistance, the court will assume, without deciding, that Rubio-Guerrero can show "cause and prejudice" to overcome defaulted claims, *inter alia*, as the result of "ineffective assistance" of trial and appellate counsel. Therefore, the court will pass on to the merits of Rubio-Guerrero's claims for § 2255 relief.

## III. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Rubio-Guerrero's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

A claim that has been unsuccessfully raised on direct appeal may not be relitigated on a motion to vacate. *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'")

(quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Rubio-Guerrero's claims for § 2255 relief.

## B. Ineffective Assistance Of Counsel

### 1.  Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Rubio-Guerrero is entitled to relief

on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*,

423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).

### 2. *Failing to raise outrageous conduct*

Rubio-Guerrero asserts that the "police, and government in their conduct, surpasses the bar, of outrageous conduct, by targeting, and setting the Petitioner up for entrapment." (Supp. to Motion at 7). In further support of this claim, Rubio-Guerrero alleges that "because of [his] spanish Nationality," he was targeted as a drug dealer. (Supp. to Motion at 7). Rubio-Guerrero attaches exhibits of photographs he claims depict police harassment

as evidence of his having been targeted. (Supp. to Motion, Ex. 3). The respondent argues that these claims must fail because Rubio-Guererro provides no factual allegations to support his claim.

This court will construe this claim as an allegation that Rubio-Guererro's trial counsel failed to raise this ground as a defense to the charge in the indictment. "Outrageous government conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the 'narrow band' of the 'most intolerable government conduct.'" *United States v. Boone*, 437 F.3d 829, 841 (8th Cir. 2006). "Whether particular government conduct was sufficiently outrageous to meet this standard is a question of law which we review de novo." *Id.* "[T]he level of 'outrageousness' needed to prove such a due process violation . . . is quite high." *United States v. Berg*, 178 F.3d 976, 979 (8th Cir. 1999). "[T]he rule that outrageous government conduct can foreclose criminal charges has been applied by our court almost exclusively to situations involving entrapment, where law enforcement officers have sought to create crimes in order to lure a defendant into illegal activity that '[h]e was otherwise ready and willing to commit.'" *Id.* at 842. "The defense of outrageous government conduct is similar to, although different from, the defense of entrapment[:] [w]hereas the defense of entrapment focuses on the predisposition of the defendant to commit the crime, the defense of outrageous government conduct focuses on the government's actions." *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999). "[G]overnment agents 'may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process.'" *Id.* Rubio-Guerrero's burden is to "establish that the government action complained of is 'truly irrational,' that is 'something more than … arbitrary, capricious, or in violation of state law.'" *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

Rubio-Guerrero does not provide any facts to support his argument that the government engaged in outrageous conduct in his case. He does attach photographs from what appears to be a traffic stop and search, and alleges that he was harassed, stopped, and searched because of his race. The photos, however, without more, merely depict what appears to be a fairly routine stop and search. There is no additional evidence to indicate that government officers acted in any outrageous manner. There is no evidence here that prior to the traffic stop depicted in the photos, the officers could even see the occupants clearly enough to determine their race. *See United States v. Williams*, 431 F.3d 296, 299 (8th Cir. 2005) (evidence that trooper could not see the race of the car's occupants prior to a traffic stop is strong evidence of lack of outrageous conduct based on racial profiling.) Further, there is nothing to indicate even that the officers involved in that stop had anything to do with the officers involved in investigating the matter appearing in the indictment.

Rubio-Guerrero's conclusory statements alone are not sufficient to establish a reasonable probability that a motion to dismiss the indictment would have succeeded on the alleged grounds. Therefore, he cannot establish that he suffered any prejudice from his counsel's failure to raise this claim, thus, it will be dismissed. *See Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

### 3. *Invalid guilty plea*

In his initial filing, Rubio-Guerrero does not allege any facts in support of his allegation that his plea was involuntary. Instead, he cites various legal sources regarding the voluntariness of a plea. *See* Supp. to Motion at 11. On August 4, 2009, counsel was appointed to represent Rubio-Guerrero in these proceedings. Rubio-Guerrero's counsel subsequently filed a Brief in Support of Defendant's Motion (Civ. docket no. 8), alleging that Rubio-Guerrero's plea was involuntary because "he was never shown any of the

government's evidence and that at the time he entered his guilty plea he was completely unaware of the government's case against him." *See* Brief at 5. The respondent argues that Rubio-Guerrero's claims that he didn't understand what he was pleading to and that he was never shown any of the government's evidence prior to his plea contradict his sworn testimony at his plea hearing and, therefore, Rubio-Guerrero's claim that his plea was not voluntary, must fail.

The United States Court of Appeals for the Eighth Circuit has recognized that a plea may not be knowing and voluntary when it is the result of the ineffective assistance of counsel. *See United States v. Lee*, 374 F.3d 637, 654 (8th Cir. 2004). When a defendant states at a plea hearing that he understood the charges, was satisfied with his attorney, and had committed the crimes charged, a later conclusory claim that he did not, rings hollow. *See United States v. Bahena,* 223 F.3d 979, 806-07 (8th Cir. 2000). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Rubio-Guerrero states under oath that he had been able to talk with his attorney as much as he wanted to about the charges. (Plea Hrg. Trans., 8-9). Further, the court engaged in an extensive discussion of the factual basis for the guilty plea. (Plea Hrg. Trans., 24-32). The government explained in detail both the conspiracy and the government's understanding of Rubio-Guerrero's involvement in the conspiracy. Rubio-Guerrero acknowledged, without any apparent surprise, that both the conspiracy and his role therein, were as described by the government. (Plea Hrg. Trans., 24-32). Finally, Rubio-Guerrero's counsel stated that he had had full access to the discovery materials. (Plea Hrg. Trans., 33). Given the statements of both Rubio-Guerrero and his attorney at the plea hearing, this court does not find credible the claim that Rubio-Guerrero was never shown any of the government's evidence and that at the time he entered his guilty plea he

was completely unaware of the government's case against him. Therefore, Rubio-Guerrero cannot establish that his attorney's performance was deficient on the basis that he failed to advise his client about the contents of the discovery file because the record demonstrates that Rubio-Guerrero was familiar with the information known by the government at the time of the plea hearing. Rubio-Guerrero therefore cannot show that his counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688).

Rubio-Guerrero also cannot establish that, even if his counsel's performance was deficient, and this court does not determine that it was, that he was prejudiced in any way by his attorney's performance. *See Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. Rubio-Guerrero has not shown "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Given the strength of the evidence against Rubio-Guerrero, as outlined extensively at the plea hearing, there is no reasonable probability that Rubio-Guerrero would not have pleaded guilty to the crime charged in the indictment. For these reasons, this claim of ineffective assistance, must fail.

### 4.    *Withholding of Brady materials*

Rubio-Guerrero alleges that both the government and his attorney withheld vital evidence. (Supp. to Motion at 10-14). Rubio-Guerrero claims that he would not have pleaded guilty if he had been aware of the exculpatory evidence. (Supp. to Motion at 10).

The respondent argues that Rubio-Guerrero fails to establish how any allegedly withheld materials would exculpate him. (Response at 7).

Rubio-Guerrero claims that his attorney and the government withheld "surveillance videos and other discovery material." (Supp. to Motion at 12). Rubio-Guerrero claims that these videos were revealed to third parties by his attorney and that they prove that he is not guilty. (Supp. to Motion at 12). In support of this allegation, Rubio-Guerrero attaches an affidavit by Fernando Hernandez. (Supp. to Motion, Ex. 2). Fernando Hernandez claims that Rubio-Guerrero's attorney showed him videos related to Rubio-Guerrero's case, which he claimed to have also shown to Rubio-Guerrero, and that these videos did not have Rubio-Guerrero in them. *Id.* Additionally, Rubio-Guerrero attaches an affidavit by Vianey Tapia, who also claims to have been shown a video of a drug transaction that she states does not depict Rubio-Guerrero. (Supp. to Motion, Ex. 2 at 6-7). Vianey Tapia states that she informed Rubio-Guerrero's attorney that the video did not show Rubio-Guerrero. *Id.*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. In order to establish a violation of *Brady*, defendants must demonstrate that the evidence was 1) suppressed; 2) exculpatory; and 3) material to guilt. *Christenson v. Ault*, 598 F.3d 990, 996 (8th Cir. 2010) (citing *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). To establish a *Brady* violation, the defendant must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Livingstone*, 576 JF.3d 881, 884 (8th Cir. 2009).

*Brady* controls when exculpatory evidence is not produced by the prosecution. It is clear from the affidavits offered by Rubio-Guerrero that the evidence in question was produced by the prosecution to Rubio-Guerrero's attorney. Therefore, any decision made

by the attorney with regard to showing the videos to Rubio-Guerrero would simply have been a strategic decision by the attorney. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. No evidence has been presented to overcome the strong presumption "that his counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Rubio-Guerrero cannot show deficient performance by counsel; therefore, the court does not need to proceed any further in its analysis of an "ineffective assistance" claim. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

### 5.    *Violation of judicial rules of conduct*

Rubio-Guerrero claims that his constitutional rights were violated by the undersigned's statement during sentencing that the Rules of Evidence did not apply to sentencing proceedings. (Supp. to Motion at 13). The respondent does not address this claim.
The court construes this claim as a claim that Rubio-Guerrero's counsel provided ineffective assistance of counsel by failing to raise this issue at any point in the proceedings.

The statements in question arose in the context of an objection to evidence made by Rubio-Guerrero's attorney during the sentencing hearing. The court made the statement that "Well, the Federal Rules of Evidence don't apply in this sentencing, so I'll just take it subject to the objection and give it whatever weight I think it's entitled to." (Sent. Trans. at 8). Rubio-Guerrero's attorney then asked "which rules don't apply?" (Sent. Trans. at 8). The court responded with "None of them." (Sent. Trans. at 8).

It is well settled that "The Federal Rules of Evidence do not apply at sentencing." *United States v. Ceballos*, 605 F.3d 468, 472 (8th Cir. 2010), and this was so at the time

of Rubio-Guerrero's sentencing hearing in 2007. *See* Fed.R.Evid. 1101(d)(3); *United States v. Fleck,* 413 F.3d 883, 894 (8th Cir. 2005).

An attorney does not provide ineffective assistance of counsel for failure to perform acts appearing to be futile or fruitless. *See Garrett v. United States,* 78 F.3d 1296, 1302 (8th Cir. 1996) *cert. denied,* 117 S.Ct. 374 (1996). Although Rubio-Guerrero does not explain what steps he believes his attorney should have taken, it is clear that expecting his attorney to raise a violation of any rules of judicial conduct based on the above statements would have been futile. Rubio-Guerrero's claim of ineffective assistance of counsel on this ground, will, therefore, fail.

### 6.    *Bias of judge*

Rubio-Guerrero asserts that the undersigned should recuse himself due to "prejudicial remarks, and biased statements." (Supp. to Motion at 16). Rubio-Guerrero again points to the undersigned's statement during the sentencing hearing to the effect that the Rules of Evidence do not apply to such a proceeding as demonstrating bias towards him. Rubio-Guerrero claims that the statement that the Rules of Evidence do not apply at sentencing proceedings was "unprofessional and racially inflamed." The respondent does not address this claim.

Under 28 U.S.C. § 455 a judge must disqualify himself or herself in any proceedings in which his or her impartiality might reasonably be questioned. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 861 (8th Cir. 1995). The test for determining whether a judge's impartiality might reasonably be questioned is an objective one. *Id.* The relevant inquiry thus is whether the "average person on the street" would have a factual basis to doubt the impartiality of the judge under the circumstances. *Id.* Recusal is required only if the violation is such that the sentencing judge has displayed such a deep-seated favoritism or antagonism that fair judgment is impossible. *United States v. Larson*, 110 F.3d 620, 628

(8th Cir. 1997). As discussed above, the allegedly offensive statement did no more than accurately state the law in response to an evidentiary objection. To the extent that this claim is construed as a claim of ineffective assistance of counsel for failure to request recusal, it will be denied because Rubio-Guerrero cannot establish that his counsel was ineffective or that he was prejudiced because he has not established that the undersigned's statement regarding the Rules of Evidence was anything more than a statement of the applicable law.

### 7.   *Violation of right to confront witnesses*

Rubio-Guerrero alleges that his counsel failed to assert that "the admission of Laboratory Reports, (analysis) violated the defendant's 6th Amendment right to confront the witness against him." (Supp. to Motion at 27). Without explanation, Rubio-Guerrero claims that if his counsel had been able to cross examine the lab technician he may have received less time in prison. *See* Supp. to Motion at 28. Respondent argues that Rubio-Guerrero waived his right to confront witnesses by pleading guilty. (Response at 7). The respondent further argues that *Melendez-Diaz*, relied on by Rubio-Guerrero for the proposition that lab technicians must be available for confrontation, announced a new constitutional rule of criminal procedure and is not applicable to cases that became final before the new rule was announced. *See Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009).

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." *Id*. at 2531. A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial, or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id*. Well after Rubio-Guerrero's sentencing, the Eighth Circuit Court

of Appeals held that sworn certificates showing the results of scientific drug tests are testimonial statements, and, therefore, the analysts are witnesses a defendant has the right to confront. *United States v. Charboneau*, --- F.3d ---, 2010 WL 2977339 (8th Cir. 2010) (citing *Melendez-Diaz*, at 2532.)

Rubio-Guerrero pleaded guilty to Count One of the indictment on April 6, 2007. See Crim. no. 126. During his plea taking, Rubio-Guerrero waived his right to trial, including his right to confront witnesses. (Crim. no. 126, at 13). Rubio-Guerrero acknowledged that he was responsible for delivery of at least 500 grams of methamphetamine. (Crim. no. 126, at 32). It is clear that Rubio-Guerrero pleaded guilty to Count One of the indictment voluntarily and with full knowledge of the amount of drugs he was pleading guilty to having distributed. (Crim. Docket 126, at 34).

The Supreme Court has held that a defendant can waive certain constitutional rights by entering a guilty plea. *See United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003). Specifically, "a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20 (1992). Even if we assume that Rubio-Guerrero did not waive his right to confrontation, his claim that his right to confrontation was violated is defeated because "[t]he right to confront witnesses does not attach at sentencing." *United States v. Wise*, 976 F.2d 393, 401 (8th Cir. 1992) (en banc) *cert. denied*, 507 U.S. 989 (1993)). Further, while Rubio-Guerrero did object to the calculation of types or quantities of drugs in the PSIR, for which he was responsible, he did not do so on the basis that they were not the drugs nor the quantities indicated. (PSIR at 9).

An attorney does not provide ineffective assistance of counsel for failure to perform acts appearing to be futile or fruitless. *See Garrett v. United States,* 78 F.3d 1296, 1302 (8th Cir. 1996) *cert. denied,* 117 S.Ct. 374 (1996). Any objection by Rubio-Guerrero's

counsel, at the sentencing hearing, to reliance on laboratory reports would have been futile, therefore, Rubio-Guerrero cannot demonstrate that his counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). Rubio-Guerrero's claim of ineffective assistance on this ground, will, therefore, fail.

### 8.   *Lack of jurisdiction or venue*

Rubio-Guerrero argues that this court lacks jurisdiction and venue to prosecute him. (Supp. to Motion at 27). The respondent claims that Rubio-Guerrero's argument fails because he admitted committing the criminal conduct charged in the indictment, which charged him with conspiring to distribute methamphetamine in the Northern District of Iowa. (Response at 8). The respondent further indicates that evidence in the discovery file and uncontested facts in the PSIR establish that Rubio-Guerrero committed the charged offenses in the Northern District of Iowa.

Under 28 U.S.C. § 2255(a), a federal prisoner has an avenue of relief if "the sentence was imposed in violation of the constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Sun Bear v. United States*, ---F.3d --- 2010 WL 2813620 (8th Cir. 2010). Title 18 U.S.C. § 3231 provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Further, 18 U.S.C. § 3232 provides that "[p]roceedings [are] to be in [the] district and division in which [the] offense [was] committed." Rule 18 of the Federal Rules of Criminal Procedure states that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Venue is proper in a conspiracy case in any district where any conspirator commits an

overt act, even if other conspirators were never physically present in that district. *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010).

The undisputed facts in this case demonstrate that a co-conspirator made a telephone call from Iowa to make arrangements for delivery of the drugs at issue in the conspiracy and that drugs were transported on a highway in Iowa. (Plea Trans. at 28; Sent. Trans. at 44). When Rubio-Guerrero pleaded guilty to Count One of the indictment, he admitted to all of the essential elements of the indictment, including that the conspiracy occurred in the Northern District of Iowa. *See Adkins v. United States,* 298 F.2d 842, 844 (8th Cir. 1962) (A plea of guilty is an admission of all essential elements of an information or indictment.) *cert. denied*, 370 U.S. 954 (1962).

Rubio-Guerrero provides no argument in favor of his position that the district court lacked jurisdiction over this crime and this court finds that the facts and evidence of the case make venue appropriate in the United States District Court for the Northern District of Iowa. Rubio-Guerrero later claims that his counsel was deficient for failing to adequately investigate a venue challenge. (Supp. to Motion, at 33). An attorney does not provide ineffective assistance of counsel for failure to perform acts appearing to be futile or fruitless. *See Garrett,* 78 F.3d 1302. As discussed above, venue was proper in this case and Rubio-Guerrero's attorney did not provide ineffective assistance of counsel by failing to adequately investigate a possible venue challenge.

### 9. *Insufficient indictment*

Rubio-Guerrero asserts that the indictment in his case was deficient in violation of the Federal Rules of Criminal Procedure, Rule 7(c)(1). *See* Supp. to Motion, at 32. Rubio-Guerrero appears to claim that the indictment in his case contained misstatements or perjurious statements. *See* Supp. to Motion, at 32. This court will construe this allegation that Rubio-Guerrero's attorney was ineffective for failing to move to dismiss the

indictment. The respondent argues that indictments challenged after a final judgment are liberally construed in favor of sufficiency and that the indictment in this case cited the relevant criminal statutes and used sufficient language to put Rubio-Guerrero on notice of the charged offense. *See* Response at 9.

To be sufficient, an indictment must fairly state all the essential elements of the offense. *United States v. Camp*, 541 F.2d 737, 739 (8th Cir. 1976) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id.* (citing *Hagner v. United States*, 285 U.S. 427 (1932). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. *Id.* (citing *United States v. Carll*, 105 U.S. 611, 612 (1882). In determining whether an essential element has been omitted a court will not insist that any particular word or phrase appear, and the element may be alleged "in any form" which substantially states the element. *Id.*, at 740 (citing *Hagner,* 285 U.S. at 433).

"[Misstatements or mistakes alone do not justify the dismissal of an otherwise valid charge. *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999). "[I]n order to have a charge dismissed for an alleged misstatement or even a perjurious statement, [the defendant] must show that the misstatements were material. *Id.*

The essential elements of a drug conspiracy are that "two or more persons reached an agreement to distribute or possess with intent to distribute a controlled substance, that the defendant voluntarily and intentionally joined the agreement, and that at the time that

he joined the agreement, he knew its essential purpose." *United States v. Harris*, 493 F.3d 928, 931 (8th Cir. 2007). The indictment in Rubio-Guerrero's case stated that Rubio-Guerrero and a co-defendant "did knowingly and unlawfully combine, conspire, confederate, and agree with each other and with other persons, known … to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine … and to distribute 50 grams or more actual methamphetamine … and to distribute marijuana." Rubio-Guerrero does not identify any element of the crime that is missing from the indictment and this court finds none. *United States v. Harris*, 493 F.3d 928, 931 (8th Cir. 2007); *See Also United States v. Adams*, 401 F.3d 886, 893 (8th Cir. 2005). Further, Rubio-Guerrero fails to identify any perjurious statement or misstatement that formed the basis for the indictment. *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999). Without any indication of what perjurious statements or misstatements formed the basis for the indictment, this court cannot determine that such statements were material.

Rubio-Guerrero cannot demonstrate that his counsel's performance "'fell below an objective standard of reasonableness,'" because he has not demonstrated that there would have been grounds to move for dismissal of the indictment in his case. *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). Rubio-Guerrero's claim of ineffective assistance on this ground, will, therefore, fail.

### 10. *Failure to file motion to dismiss*

Rubio-Guerrero alleges, in his *Pro Se Supplement* to his Motion, that his attorney provided ineffective assistance of counsel by failing to file a motion to dismiss, based on Rubio-Guerrero's lack of dominion and control over the drugs in question. (*Pro Se Supplement* at 3). Rubio-Guerrero argues that the government would have been unable to establish that he was responsible for the drugs found in a storage shed when three other

people were known to have a key to the same storage shed. The respondent does not address this issue.

"To obtain a conviction for conspiracy, the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." *United States v. Harris*, 493 F.3d 928, 931 (8th Cir. 2007)*; See Also United States v. Adams,* 401 F.3d 886, 893 (8th Cir. 2005).

The evidence in this case, regardless of how many individuals had keys to the storage shed in which a portion of the drugs counted as part of the conspiracy were found, clearly demonstrates that Rubio-Guerrero made arrangements for sale of drugs, as part of the conspiracy to a confidential source on September 26, 2006, and fronted a portion of drugs on that date. (PSIR, ¶ 9). Further, the evidence demonstrates that Rubio-Guerrero later made arrangements, with the same confidential source, to sell 100 pounds of marijuana and 1/2 to 1 pound of crystal methamphetamine on October 2, 2006. Money, but no drugs, changed hands on that date. (PSIR ¶ 10). Later, on October 4, 2006, Rubio-Guerrero made arrangements to sell methamphetamine to the confidential source from the address at which the storage shed was located. (PSIR ¶ 13). On the same date, Rubio-Guerrero was seen leaving the residence at which the storage shed was located. (PSIR ¶ 14). A key to the storage shed was found on Rubio-Guerrero when he was arrested and taken into custody on October 4, 2006. (PSIR ¶ 15). Rubio-Guerrero did not object to these facts in the PSIR.

If there is no reasonable probability that the motion to dismiss the indictment would have been successful, Rubio-Guerrero cannot establish prejudice. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Based on the above evidence, there was more than sufficient evidence to support a conviction on Count One of the indictment, regardless

of the fact that other individuals also possessed keys to the storage shed in question and it is unlikely that a motion to dismiss the indictment on the grounds urged by Rubio-Guerrero would have been successful; therefore, he cannot establish prejudice and cannot demonstrate that his counsel provided ineffective assistance on this basis.

### 11.   *Failure to properly advise of potential sentence*

Rubio-Guerrero additionally alleges that his counsel provided ineffective assistance by advising him that he would "receive 30 years in prison," rather than 10, thereby pressuring him to plead guilty instead of proceeding to trial. (*Pro Se* Supplement at 4). The respondent does not address this issue.

The potential consequences of conviction were explained to Rubio-Guerrero, by the Court, prior to his guilty plea. (Plea Hrg. Trans. at 9). Judge Zoss explained to Rubio-Guerrero that he "could be sent to prison for up to life and that there was a mandatory minimum prison sentence of ten years." *Id.* Rubio-Guerrero clearly affirmed that he understood the statutory penalties. *Id.* Further, at Rubio-Guerrero's plea hearing, his attorney represented to the court that Rubio-Guerrero could be sentenced at a level 32 or 38 depending on various factors in dispute, including drug quantity and role enhancement issues. (Plea Hrg. Trans. at 15). Ultimately, Rubio-Guerrero was sentenced at a level 37, to 240 months. (Sent. Trans. at 51-60).

Based on the fact that his attorney's advice regarding a potential sentence was fairly predictive of the actual outcome at sentencing, this court does not find that the performance of Rubio-Guerrero's attorney, based both on the record in the case and Rubio-Guerrero's own allegations, "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th

Cir. 2003). Rubio-Guerrero's claim for ineffective assistance of counsel, on this ground, will, therefore, fail.

## C.  Certificate Of Appealability

Denial of Rubio-Guerrero's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein.  The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b).  To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569.  Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

26

debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Rubio-Guerrero has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Rubio-Guerrero's claims debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Rubio-Guerrero does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

## IV. CONCLUSION

Upon the foregoing, Rubio-Guerrero's *Pro Se* Motion Under 28 U.S.C. § 2255 (Civ. no. 1), is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA